Whyte, Judge.
Two grounds of error are relied on in this case for the reversal of the judgment of the circuit court. 1st. That it does not appear that the grand jurors who found the bill of indictment were sworn. And, 2d. that anew trial ought to have been granted because Ncilcl, one of the petit jurors, was an atheist. Besides these, several objections have been taken to the record in this case, applying to that part of it which is technically called the caption of the indictment. The caption is no part of the indictment itself — it is only a copy of the style of the court at which the indictment was found, constituting a formal statement of the proceedings, describing the court before which the indictment was found, the time and place where it was found, and the jurors by whom it was found: and these particulars it must set forth with sufficient certainty. See 1 Chit. Cr. law 326. 2 Hawk. ch. 25, sec. 16, 17, 118 &c. Upon an examination of the present record it will be found that all these particulars sufficiently appear in it. See the first and second pages.
Upon the argument the principal objection insisted on by the defendant’s counsel, and relied upon by them as constituting error, is, as they say, that it no where appears in the caption that the grand jurors were sworn, which, by them is contended to be matter of error. This proposition (to wit). — “that it no where appears in the caption that the grand jurors were, sworn,” is arrived ai, and *209 made out as follows: upon the transcript of the record in the caption, which is long and inartificially drawn up, there is a break in its form, as if purporting to be the end of the caption and the beginning of the indictment; and all that follows in the record, after this break, is claimed by the counsel for the matter of the indictment, and extended as matter of the caption. The matter thus extended by the argument as caption and attached to the indictment, as forming a part of the latter, is as follows: “State of Tennessse, Lincoln county, in the 6th judicial circuit of said State, in the circuit court of said county, at the September term of said court, in the year of our Lord, eighteen hundred and twenty eight, the grand jurors, for the State of Tennessee, elected, empannelled, sworn and charged to enquire for the body of the county aforesaid, upon their oaths aforesaid, present.” Now, whether this matter in the record belongs to the caption or to the indictment, cannot depend upon a form given to the transcript in the operation of transcribing it; but it must depend upon the question, whether it is properly and legally matter of the caption, or properly and legally matter of the indictment. This appears to me to be so plain that it only requires the question to be stated, for it to be decided. It is evident, at the first glance to be only and properly matter of the caption. It would seem to be quite unnecessary to refer to books on this question; but as the argument seemed to treat it with great confidence, I refer to 1 Saunders 308. The King vs. Kilderly, where will be found the precedent of a record of a caption, prefixed to an indictment, which caption is substantially the same as that in the present record, claimed to be a part of the indictment.
The caption in the King vs. Kilderly concludes thus: “by the oath of twelve jurors, good and lawful men of the said county, empannelled and sworn to inquire for our lord, the King, and the body of the said county, it is presented that Francis Kilderly” &c. The caption in the látate vs. M’Clure concludes thus: “the grand jurors for the State of Tennessee, elected, empannelled, sworn and *210 charged to enquire for the body of the county aforesaid, upon their oath aforesaid, present, that Samuel M’Clure” &c. This authority proves that the part of this record, repudiated as matter of caption, by the defendant’s counsel, is properly speaking, a part of the caption itself, tho’ as in the precedent cited, it is not all of the caption; and like the case cited, its place in the record seems disconnected with the preceding part of the caption. To the high authority of the case in Saunders recognized by his learned annotator, serjeant Williams, maybe added that of lord Hale who has given the form oí a caption, the conclusion of which is the same as that in Saunders. See 2 Hale 165. Copied by Chitty in the first vol. of his criminal law 327, where other more modern precedents are referred to, and to be found in 4th Chitty 194. In these forms of the conclusion of a caption, after saying, “sworn and charged to enquire for our said lord, the King, and the body of the said county, it is presented,” there is added, “as followeth, that is to say:” or “in manner and form as followeth, that is to saywhen these additions are made to the conclusion, as the caption; — then the record of the indictment followeth, thus: “Middlesex, (to wit) the jurors, for our lord the King, upon their oath present that” &c.; but in all of these forms of the record of captions and of indictments, the clause, “sworn and charged for our lord the King and the body of the said county,” is always part of the caption, and not of the indictment.
There can be no doubt upon reading this record but that the grand jury were sworn.
I have made this examination of the precedents for the purpose oí showing that it legally appears so by the caption — a conclusion I have arrived at, and which is deduced, as well from the consideration of the proper offices of the two parts, caption and indictment, in criminal proceedings, as from a view of the most approved precedents, indeed, I may say, I have not in my search, found one precedent in the opposition. My opinion, therefore, is, that the matter for the first error is not supported by the record.
*211 The second error is in not granting anew trial because Neild, one of the petit jiirors, was an atheist. It is to be observed that no case has been cited where a new trial has been granted upon this ground, nor even a case where such an exception has been taken to the verdict, and assigned as a ground for a new trial.
However, as I view the testimony on this point in the bill of exceptions, the question is not properly raised; the proof is not conclusive, enough to warrant us in saying, that the fact of atheism is established. There is no direct and positive proof evincing a serious and deliberate belief of the party in such a doctrine, and affirmative of it; and it is believed it would be going too far, for this court to draw such an inference from the matter detailed in the bill of exceptions. Seven witnesses were called to this fact, and with the exception of one of the witnesses, the reverend Mr. Sirr, there docs not appear to have been, between the witness and the party, any colloquium particularly on the subject, the object of which would be to draw forth, and seriously ascertain the fact, whether the juror, Neild, was an atheist or not. The testimony imports, and, indeed, evidently appears to be observations, and even parts of observations, made by Neild at sundry" times, without declaring the cause of them, or the occasion of speaking them; whether in earnest, by way of answer to direct interrogatories, propounded to him, for the purpose of knowing his real sentiments on the subject; or, whether in argument as a controversialist, to elicit, perhaps, what could be advanced on the other side. By catching ud detached expressions in the range of some years conversations on various subjects, and on various occasions, and bringing them forward without attention to the cause and manner of speaking them, and of all that was said at the time, a semblance of proof might be embodied that would be specious, in support of almost any proposition; when, if the whole were sifted and examined, the pro ■ position would wholly fail, and not a particle of ground be left for its foundation. The Rev. Mr. Si it’s testimony is not, perhaps, liable to the above remarks. The cause *212 of the conversation between him and Neild is not stated. Whether it turned altogether, or principally, or, hut partially upon the existence of a God: or, whether it was more general, embracing the subject of revealed religion, the doctrine of future rewards and punishments &c. &c. we are not informed. No doubt it was intended, and calculated for the good of Neild, and as such, these different matters together with others, might have been touched upon. Yet by this conversation, which, from its nature, and a combined consideration of the parties and the occasion, we might expect an express and serious declaration one way or the other — we are left in doubt. He, the witness, says that Néild did not, in terms deny that there was a God; but from what be said, he took up the belief that he was an atheist, and he tried to convince said Neild that he was in error.
The whole of this testimony — I mean of all the witnesses to this point — taken together, exhibits an eccentric man in his theological opinions, without any thing remarkable, in other respects, and is inconclusive to show any distinct, particular belief, religious or irreligious. Its general aspect is, that the subject of it wished perhaps, to be thought different from other people, but without aiming at any thing specific, or certain on the subject. I have therefore great doubts, that the proof does not admit the application of the fact of atheism. If the fact had been established, the next inquiry, is, — what is the law in a case situated as the presentís? Has a right of the defendant been violated or an injury sustained by him? The affirmative is controverted by the attorney general. In the constitution of the State of Tennessee, it is not perceived that any part of it has a particular and direct bearing on the preséntense. Article 8, sec. 2, and the declaration of rights, sections 3 and 4, seem not to have an application to it, at least on the part of the prisoner, in favor of his exception: and in the acts of assembly, nothing that is more favorable on that side has been found. Indeed, the act of 1809, ch. I ID, see. 2, upon its letter is against its relevancy. But it is argued on moral principles, that no *213 one. wlio is not impressed with the belief of a God, al- ¶ _ _ mighty and omniscient, to whom all must render an account, can be a proper juror. The soundness of this argument must be assented to; but if the law is silent on the the court cannot act.
Neild was not challenged, because the defendant says, by his own affidavit, made for the purpose of obtaining a new trial, he did not know of the objection ’till after verdict, or until it was too late to make it. Let it be supposed that the matter amounted to cause of challenge, •propter defectum, and see what the law says in that case. 1 Chitty Cr. law 545, says: “neither can the party challenge the array or any particular juryman after they have been sworn on the same day, or according to the better opinion, on any following da}'-, unless for some cause which arose after administering the oath, or by the consent of the attorney general.” It follows, therefore, that Ihe proper time for challenging, is between the appearing and the swearing of the jurors, 2 Hawk. ch. 43, sec. 1. To the same effect is I Inst, 158, a. and the case of Yicars Langnam Hob. 235. These authorities show that this exception comes too late, after the juror was sworn, the matter existing before. To this it is answered, that the defendant did not know it ’till afterwards. It appears upon the bill of exceptions, by the testimony of Col. A. Kincannon, that there had been a general impression that his(Neild’s) sentiments were different from the general belief on that subject; and the witness, Mason, says, he believes the sentiments of the said Neild were notorious. It would seem from what these two -witnesses depose that the defendant could hardly be altogether unacquainted with the matter of the exception before his trial; especially when it is remembered that Neild had sometime before, been a candidate for county trustee, a circumstance well known to elicit and give publicity to every flaw and defect of character — and ihe defendant being a resident of the county town, a position favorable to the acquiring such information. But it is possible that he did not know it, and therefore, was net prepared to take the advantage *214 of it. Be that as it may, it is not a good ground for a new trial. The principles derived from cases somewhat analogous, (it is admitted on the argument, there are none in point)are againstit. In 2 Aik. 319, Lord Hardwicke says: “the ground for anew trial is, that the def’t. in this court was surprised with evidence he was not aware of, and so not prepared to answer it — it would” says he “be of extremely dangerous consequences to grant it merely upon a suggestion that the party was not apprised of the evidence, and therefore, was not prepared to give an answer to it. Richard vs. Symes and 1 Chit. Cr. law 656. The principle of this case is precisely the same as that before this court. Nor is it any ground for a new trial that the defendant could remove the present objection upon a second trial. 2 Term Rep. 718, where Lord Kenyon said: “it would be extremely dangerous to grant a new trial on a suggestion that the party will make out a better case on a second trial.” Case of Rogers vs. Stephens. But the authorities go still further and say, that a new trial will not be granted, merely on the ground that the defendant came unprepared, eyen when the circumstance which arose was one, which it was impossible for him to foresee. I Chit. Cr. law 656, and cases there cited. Bul. N. P. 327.
As no case has been found upon the matter of the defect alleged against the juror, Neild, showing that ithas been held ground for a new trial, even, altho’ its discovery has only been made after verdict, we are not author-ised to say, from the principles in analogous cases, that it is such ground. We are deeply sensible of the situation of the prisoner, and regret the existence of the unhappy events thathave brought him before us in his present character. Still, it is our duty to declare the law, however, painful it may be to our feelings.
On the discharge of this duty, then, I give it as my opinion, and believe, that upon this record there is no good or tenable ground for reversing the judgment of the circuit court rendered therein, and granting a new trial. The defendant has had a full and fair trial according to *215 the laws of the land, and a jury of his country has found him guilty. It is very probable that no actual injury has been sustained by him in consequence of Neild being one of the petit jury; for Mason, one of the witnesses brought forward to prove the defect of his religious opinions, said he would have confidence in his honesty and integrity. I merely notice this, to say that it forms no part of the ground on which my judicial opinion is founded. The evidence detailed in the bill of exceptions is that ground; and upon that evidence I hesitate not to say, that it establishes a clear case of murder. The judge, too, before whom the trial was had, having refused to grant a new trial, shows he was satisfied with the verdict. This is a legal corroborating circumstance, that justice has been done by the verdict, and rendered according to the evidence. Mr. Justice Buller, in his nisiprius, says: “if the judge declare himself satisfied with the verdict, it hath been usual not to grant a new trial on account of its being a verdict against evidence.” See also I Chitty Cr. law, 660.
The judgment of the circuit court must, therefore, be affirmed.
Catron, Judge.
The 1st and 2d objections are, that it does not appear how the grand jury were appointed, or who they were. This is substantially shown — were it not, it can form no subject of inquiry. No exception was taken below, and it is now too late. The court could empannel bystanders — acts of 1807, ch. 31. State vs. Bennett, Yerg. Rep. 131. We must presume them good and lawful men until the contrary appears; and it lies upon the defendant to show that they are not: the rule is so in all superior courts. 2 Hawk. ch. 25, sec. 17. 4 Bac. Abr. indictment J. 572.
The defendant had full power to make the exception below, if any existed, to the pannel or competency of the grand jury, or any of them; the consequences would be mischievous to presume against the facts stated in the record, 2 Hawk. ch. 25, sec, 16, Yerger Rep. 155, *216 3d — It is objected, the grand jury who found the indict-mcnt do not appear from the record, to have been sworn.
The only evidence of the fact is in the indictment itself, returned by the grand jury — it states: “the grand jurors for the State of Tennessee, elected, empannelled, sworn and charged to enquire for the body of the county oí Lincoln, upon their oath aforesaid, present” &c.
This would be sufficient in England. 1 Chitty Grim, law 384. 1 Ld. Rag. 710. 2 Hawk, ch.,25, sec. 126. The English indictments uniformly commence: “the jurors of our Lord, the King, upon their oath present.” 4 Bac. Abr. 372. That the jurors were previously sworn does not appear by the form of recital to indictments in England; hence a caption or certificate from the clerk of the court below, is required to state this by way of explanation. 4 Bac. Abr. 572. 1 Saunders’Rep. 309; not so of the recitals in the commencement of our indictments; they leave nothing to be explained. First, are stated, the state and county; then, that the grand jury were elected, empannelled, sworn and charged to enquire for the body of the county — here, the charging and travor-siblepart of the indictment commences.
The English practice of requiring a caption to an indictment from a court below has never been known in practice in Tennessee. It is simply this: An indictment is found in some court inferior to the King’s bench; application is made before the trial is had below to the court of K. B. to send down a certiorari to bring up the cause and try it in that court. The writ is sent down, commanding the original record to be sent up. 9 Vin. Abr. 517. Of course, the indictment alone is sent; but to show that it has been regularly found, something further must he made to appear to the court above. This is the business of the caption which is an historical statement made by the clerk of the court below, of the proceedings had in his court, previous to the finding of the indictment and which is the return to the writ of certiorari.
The same practice is pursued where the trial has been had below, and the cause is brought up for judgment; or *217 where verdict and judgment have passed helow and the record is brought up to examine errors upon a judges report, similar to our bill of exceptions.-
The English caption, or schedule, is the historical statement of the clerk, and no part of the record sent up; and is on a different parchment. See King vs. Kilderly (1 Saund. Rep. 309 — Note 2.) When it is received in the King’s bench, the substantial parts thereof, are then entered of record in that court, to make the proceedings regular in form. This may be demurred to or quashed, but can be amended at any time by the government. The turning out an indicted felon in England, because of a defective caption, would be deemed worse than idle. If it be not good, the court order it to be made so, by amendment.
Any one who will examine Faulkner’s case, (1 Saund. 248-9) and 1 Chit. Cr. law ch. 7, will learn this much of the English practice: that we should understand it well is almost impossible.
Our act of 1811, ch. 72, sec. 11, allows the appeal in error from the circuit court to this court, — a mode of proceeding unknown to English jurisprudence; — there, a regular writ of error issues from the court above — perhaps, in criminal causes, a certiorari; of course with us a transcript of the record is sent up, when the appeal is granted below. The circuit court sends us the cause. The only evidence we have to proceed upon is a transcript from the records of that court, made in that particular cause and forming part thereof. We have power as a court of error to examine the record, and reverse for errors which affect the merits of the decision, (1809, ch. 126, sec. 10.) The merits alone have we power to examine. The provision extends equally to civil and criminal causes. Suppose the legislature had not given us power to examine criminal causes at all, as is the fact in almost every other country, what right would the defendant have to complain? Surely none.
It is true, the record must show that the indictment was found by a grand jury, and that it was found upon *218 oath, because this is substance. All this our forms of indictment show. The allegations, previous to the charging part, are not traversible and have no other office than to state the facts, that the grand jury were empannelled, sworn &c. No doubt this form was adopted in North Carolina and Tennessee, to supersede the necessity of setting forth previous proceedings of the term, appearing upon the records, which had no more connexion with one indictment found during the term, than another. This form shows every thing; previous parts of the record show nothing except the names and number of the grand jurors. If the names no not appear in the record, and the proceedings have been had in a superior court — regularity of proceeding is presumed, as in the King’s bench, i Saund. Rep. 248 — Note 11. Nor need the names of the grand jurors appear where the indictment has been found in the circuit court, if it appears to have been found by the competent number.
4th Objection. There is no issue. We think the issue in this case sufficiently formal.
5th. It does not appear that the traverse jury were Sworn in the county of Lincoln; that is, the words, then and there are omitted. They are never necessary in superior courts. 4 Bac. Abr. 573. 1 Chit. Cr. law 335-6.
6th Objection. That one of the jurors, after the trial, was discovered to be an atheist, therefore, incompetent, and anew trial should be granted for this reason.
The act of 1809, ch. 119, sec. 2, provides “that every white male citizen, being a householder and arrived at the age of twenty one years, shall be deemed and held, legally qualified to act as a grand and petit juror; any law, custom or usage to the contrary, notwithstanding.”'
By this description in the statute an atheist is clearly included. To exclude him would be making an exception to the statute, which the legislature have not done, and the courts have no power to do, as we have at different times decided, when considering of other statutes. If this objection is good to a petit juror, it equally lies to a grand juror, when we would be bound to arrest the *219 judgment and set the defendant at large, unless we saw proper to bind him in our capacity of committing justices.
The objection comes too late. If a juror is not a good and lawful man, can he be challenged after he is sworn? The ancient and well settled English authorities are, that you cannot challenge the juror after he has been sworn — ■ unless it be for cause arising afterwards. We adopted the right of trial by jury as we found it, at the time we declared our independence as a government, in 1776— the English common law and the statutes, passed before the 4th Jac. 1, we adopted. By these statutes, and by the common law,we are now’bound in the administration of justice in this state.
If the rules of decision were settled, and we are bound by them, why look into the doubtful decisions of sister states. Nothing lias been better settled for centuries in England, than that after a juror is once sworn, he cannot be challenged for any pre-existing cause. 1 Inst, 158 a. 3 Vin. Abr. E. 11. page 764. Yelverton Rep. 24. 2 Hawk. Pl. Cr. ch. 43, premises it to be a settled point of practice, “that no juror can be challenged, either by the King or prisoners, without consent, after he has been sworn, unless it be for some cause which happened since he was sworn.” It would be most dangerous to pursue a different practice. It is admitted, if the defendant had knowledge of the objection before the juror was sworn, then, he could not after, be permitted to take advantage of it. Of this want of knowledge, what evidence has the court? The affidavit of a convicted felon — proof always to be had, when deemed necessary. It is said' the want of knowledge is an exception to the general rule. This is a mistake. The case of Watson in Yel-verton, was this very case, where the exception was discovered after the jury was sworn, and the court declared it within the general rule. This was as early as the 44th of Elizabeth. The cause of challenge was, propter affec-tum, (4 Black. Com. 352,) and clearly a good one, if made in time in Watson’s case.
7. The court was asked to charge (lie jury, that it was *220 apresumption oj law, that the homicide was the result of the sudden quarrel and combat, and not of previous malice. To this the court responded, “that it would be more charitable so to consider it.” The -charge was more favorable to the defendant, than the law warranted. Iiaw. B. 1, ch. 1, sec. 30, lays down the true rule: “where two persons, who have formerly fought upon malice, are after-wards, to all appearance, reconciled, and fight again on a fresh quarrel, it shall not be presumed they were moved by the old grudge, unless it appear from the whole circumstances of the fact.” The court should have told the jury that no legal presumption held either way; that they were to judge from all the circumstances whether the defendant was moved by the old grudge, or the new provocation to commit the homicide. In the first case it would be murder; in the second, manslaughter. The charge first given was in every way satisfactory; and the judge would have done his duty not to have charged further.
The various propositions to charge the jury were calculated to involve the court in difficulty, as is always the case when complicated points of law are suddenly presented. This is almost uniformly the true object of the request to charge further, and very rarely should be attended to by the courts.
We think the evidence proves this to have been a case of clear and aggravated murder: the defendant can truly be said, to have been regardless of all social order and fatally bent upon mischief. And, therefore, we order the judgment to be affirmed.
Peck, Judge.
An objection is taken to this conviction, because it no where appears on the record that the grand jurors, who found the bill of indictment, were sworn. An answer is given that the bill of indictment on its face, using the language, “the grand jurors for the State, elected, empannelled, sworn and charged” cures thé defect. This raises the question; will a recital made by the grand jury be, of itself, sufficient to supply the alleged delicien- *221 cy m the caption and record organizing the court for the J T r „ . , , . , , ' , term? 1 am of opinion that such recital does not aid the record. ,
The finding of a bill of indictment is an inquisition. It is not taken in the presence of the court. The grand inque-y are a body to themselves, auxiliary to the court, fixing their own times of meeting and of adjournment— as to the person charged in a bill of indictment, the proceedings of a grand jury are exparta. The .grand jury, therefore, must be constituted under the known forms of law; and when so constituted, inquiry is by them made after, on their own knowledge of facts, and the record must show all such matters as give the grand jury power to make the enquiry and present the offence. If the jury may state all facts necessary to make their acts legal, then, they may be a self created body, sworn, not before a court, yet taking cognizance of ofiences; sending up their proceedings to a court, and compelling persons to answer.
Such anomalies strike at the root of the trial by jury; and, in effect, defeat the established usage of ages. The f irm, of proceeding by indictment was, at the time of framing the constitution, and still is, part of the law of the land. That law expects that a fitness shall appear, which prepares and brings forth an accusation, to compel an answer. The qualified condition of the jury must be evinced by some higher authority, some better evidence than that of their own creating. If called and qualified by a court to act as an auxiliary, and such court be required to keep a record of her own proceedings, that record, and nothing short of it, can be heard to speak— not the transient thing that existed in pais, and 'which by possibility might be returned into court on the last day of the term; and, until returned, it is no record, which proves that what they return is recital. Could a grand juror be convicted of perjury on such evidence of his having taken an oath? Certainly not, because that law which requires that a record shall be kept, and be signed by the judge, supposes better evidence behind. Act 1809, ch. 49.
*222 Batí would ask — what is the language of the jurors'! They speak in the past — the language implies they had been sworn; — when, or where — or, by whom was the oath administered? The very silence of the record is an evidence for the prisoner, that the inquisition was not taken on oath. Again, if this be taken as the caption, there is another capital defect in it. It is not shown by this as a caption that the inquisition was taken by twelve good and lawful men, jurors, and wants every requisite but that of their having been sworn. This is, certainly, fatal to the ¡ndietment, I Saund. 340, top page — note 1. Cro. Eliz. 654. 2 H. 14. P. C. 167. And Hale is of opinion that the names should appear in the caption. 2 Black. Rep. 718. All agree, however, that the caption, if it does not give the names of the jurors, must at least show that it was taken by twelve jurors. The court are thrown into this dilemma: that if they adopt the indictment as containing an extract- from the record, it is fatal, for the cause first mentioned: if the record itself betaken, then, it is fatal because it does not show the jurors to have been sworn— if both are taken together, they are irreconcileable with each other, because it is not shown in the indictment, that the jurors, there said to be sworn, are the same mentioned in the record. The very circumstance of unfitness between the two, so far from inferring they are the same, the law, if it would infer any thing, would infer they were not the same, as in the case in 3 Mod. 202.
Nothing can be taken by intendment against the prisoner. For us to suppose that the circuit court acted right in this particular, when she will not tell us she acted at all, would be exercising an excess of charity, which, if applied to a like extent in other cases, might be made to cure all deficiencies and correct every error. The authorities are ample to sustain me, and none can be shown the other way. The case in 3 Mod. 202, it is believed, is in point, and that case becomes the stronger to my purpose, when it is considered that the objection was taken after conviction and execution of the judgment for manslaughter. The prisoner was allowed his clergy; *223 and his goods being seized as forfeited, he then moved that the indictment should be quashed, because the caption did not show that the jurors had been sworn; and the court there said they would intend “these were two persons, for no court would justify such a judgment.” The case of Feilds, Peck’s Rep. went off upon this point, and she was remanded to be indicted again. The case of Cornwell, Yerg. and Mart. Rep. has been examined, and the resolution of a majority of the court steers clear of the question now made: so, that feeling myself untram-elled by any adjudicated case, 1 am following the law in saying, that the omission is fatal.
This court having rejected like proceedings, and taken the pains, even to prepare forms — shall we recede from former grounds, and thereby jeopardize the lives of mon, because inferior jurisdictions, in defiance of strongly expressed disapprobation of so loose a practice, will still slumber, -while the best interests of the state demand vigilance and precision? I say, no. Send back all such cases, with the objection which legally applies to them. By so doing, inferior jurisdictions will be directed, at least, to substance. They will be taught that their per-severence in neglect will not be taken by this court as a plea of necessity or apology for improperly taking away life. As we have to give judgment upon the whole record, I can perceive no difference between this error and one committed on the trial which went to the merits; for if the foundation was bad, no structure could safely be made to rest upon'it. See Cox Rep. 260, State vs. Putnam. — 2 Hal. 361, State vs. Harris. — 18 Johns. 212, People vs. M’Kay.
It is said if there were no caption to an indictment, that this court would intend the judge, selected for his skill, and having jurisdiction, has acted right. To that I have a plain answer — the judge has, by the record, shown what he did do; and in what he has done, there has been a fatal omission.
Another question raised upon this record will be now noticed. After verdict, and on motion for a new trial,it *224 is shown to the court, that one of the traverse jurors was an atheist. This was not discovered until after the juror was sworn. The evidence is full upon the point. It is said no case can be found where ¿Ais has been held a good objection. We will, then, reason from analogy. An atheist cannot be a witness. Bull. N. P. 202. 1 Atk. 45. Leach’s cases 52. 18 Johns. Rep. 98, are full to this point — 2 Term Rep. 96. If he could not give evidence so as to affect the prisoner’s life, can he gravely set and draw deductions from evidence, which deductions may affect his life? The streams of justice should be as pure as the fountains that feed them.
By our constitution such a person could not hold a civil office — he could not be a constable, nor even an administrator. The constitution is the expressed will of the community — by common consent, in article 8, sec. 2, no person who denies the being of a God, or a future state of rewards and punishments, shall hold any office in this government; why? it may be asked. It is answered, because he cannot take an oath — he cannot be trusted. This question has nothing to do with religious freedom. Give to religious freedom the broadest, possible latitude; still, ir-religión and blasphemy are quite other things. The constitution has pointed her artillery against such as avow themselves to be atheists.' No law can place an atheist upon a footing with a Christian, because the constitution has placed the barrier between them. If common law were silent, if the statute law-were silent as to the competency of such a person, — still, by resorting to the constitution, the means of establishing a rule would be at once given — he is not trust worthy! The prisoner had a right toa trialby a jury of his peers, — that is,by his equals. Has he had such a trial? I answer no. This juror cannot claim an equality with those who are not atheists, because he is a disqualified person; mot so the other. An act of the legislature has declared that persons of color, within a given degree, shall not be admitted witnesses against white men; one laboring under such disqualifica-iion could not act as a juror. To swear him in such a case *225 as the present, would be to place him in a situation to create a high aud conclusive species oí evidence against a citizen, a verdict, and would be making him the equal of a white man. The sheriff is hound to summon qualified persons. The language of the books is, without just exception: if he summon one subject to just exception, and this be unknown to the sheriff or to the prisoner at the time, and he be elected, will not the court, after verdict, consider it as an accident which has happened, to the prejudice of a prisoner, which he (the judge) will correct by granting a new trial.
In 2 John. Rep. 194, the court, after judgment, reversed it, where the exception to the juror would not have rejected a witness. The case of Hillingsworth vs. Duane, was a civil case. There an alien was placed on the jury; and after verdict it was moved to set it aside for that cause; and tho’ in Pennsylvania it is no cause of challenge, yet the court, after long advisement on the question, whether the verdict should not he set aside, ruled, that the objection came too late after verdict, and such was the impression made upon the mind of the court, that an order was made upon the motion not to summon aliens in future; and ever afterwards, if summoned, they were discharged. This the court did to preserve in future times the common law principle, that aliens shall not be jurors, 4 Dallas.
In North Carolina the judgment in a state case was arrested, because it was made appear that one of the grand jurors was nota freeholder, and therefore a disqualified juror. If it be said, in answer to this case, that the prisoner had no opportunity of taking exception to a grand juror, I will answer, that neither could a prisoner have an opportunity to challenge for the cause specified in this case, because the fact which disqualifies was unknown to him. The case from North Carolina sustains both exceptions here taken. It proves the necessity of a caption to an indictment, with the names and oath of the grand jury, as well as the right to except, where the disqualification is discovered.
The next case I will notice, will be found in 1 Cow,. *226 Rep. the State vs. Babcock, for murder. The statutes oí Massachusetts require that jurors shall be freeholders. One of the jurors placed on the traverse, was discovered not to have been a freeholder; and for that, there was a motion in arrest of judgment. The court sustained the motion. What the judges there sajis worthy to be repeated, because based upon that humanity which ought always to be followed: “tho’ this defect does not affect the moral capacity of the qualification of the juror, and is strictly technical, yet the law is too positive to be dispensed with: and in a criminal case of a capital nature it cannot be presumed that the prisoner waived any advantage or privilege given him by law.
In Maryland, a new trial was granted where a disqualified juror had set upon the trial. Shane vs. Clarke (3 Har. and Mc,) H. 100. See Hard. 167. 4 Bibb. 90. 2 Bur. 862, to the same point. But it is said our acts make a householder a good juror; a convicted traitor, burglar, murderer, a thief or forger could be a householder, and could, therefore, be a juror. Being a householder will not so far justify breaking down every barrier between virtue and vice, as to dispense with good and lawful men. I place my objection to this man on the constitution and common law, together with the statutes. In the case of the people against M’Kay, 18 Johns. Rep. 212, the prisoner was put upon his trial — he challenged jurors, and after conviction, objected in arrest of judgment, that the statutes had not been pursued in summoning the grand jury, no venire appearing to have been regularly issued. For this defect the judgment was arrested, and it was held to be no waiver of the objection, that the prisoner had challenged to,the polls. There, the court said, it is a humane principle, applicable to all criminal cases, and, especially, when life is in question, to consider the prisoner as waiving nothing on the score of irregularity, but standing upon all his rights. — Same point decided in 2 South 539. Nichols vs. the State of New Jersey.
So, if a grand juror is no freeholder, (Hals. Rep. same State) the indictment will be abated. In 3 Dal. 518. *227 United States vs. Fries, for treason, the court granted a ... . i i new trial, it being shown that one of the jury had exfres-sed an opinion before trial, unfavorable to ,tlie prisoner. Court will grant a new trial if one of the jury, after argument and before rendering his verdict, intimates the result of their deliberations. 1 Tyler 258. These authorities prove incontestibly that the objection does not come too late after verdict, where the cause of challenge is not known, and forms an exception to the general rule.
I think for myself, that it must be conceded that this case is out of the whole range of cases, English or American. The grounds of exception under our constitution, make this a stronger case for the prisoner than can well be conceived of, where the exception is taken after verdict. It seems to me that it is impossible to consider it otherwise than as if eleven jurors had passed upon the trial. This person called as a juror had no moral capacity to be bound by the obligation of an oath: he did not believe in a future state of rewards and punishments; and was, therefore, in contemplation of law, wholly indifferent to the fate of the prisoner, or to his’ own fate. He was as an evil genius, in a'sacred place; his true character concealed, first from the prisoner, and secondly, from those he was thus improperly associated with. The objection lay locked up inhis own bosom. It is wholly different from the case of one, who, having been convicted of a crime, was, for that cause, disqualified.
If crime created the disqualification, the law supposes that it was public, and that record evidence would prove the fact; and in such a case if the prisoner select such a person, there might be propriety in supposing that the objection was waived. If the prisoner had suspicions of this man’s want of moral sentiment, he was not at liberty to ask the question of the juror. Swift Ev. 49. But from the very occurrence of depravity, is it presumed that any man would be suspected of such unusual , tenets? It is a maxim, that a man is bound to know the law, but he is not bound to know the fact. A fact so out of the common order of things, even the court would not anticipate *228 as possible, and would not, therefore, direct any question to it. The prisoner could not possess that intuition which scans the internal workings of the human heart.
Note. — Hals. Reports are referred to from the American Digest, which see.
I cannot conceive of any thing more tantalizing than to require of a human being to know what he is presumed not to know; and be bound by a-choice, where the means of testing the propriety of that choice are denied him. The tyrant, who condemned for the violation of laws placed beyond the reach of vision, was not worse than he, who closing the mouth of the prisoner, condemns him because he will not speak.
For these reasons, if I stood without a precedent for allowing the exception to a juror after verdict, where the probability and law of the case presumes a want of knowledge of the íact — I would now make ii. 3 Har. and Mc,H. 101. Hobart pl. 97. 5 Bac. 245. 7 Mod. 54. 11 Mod. 119. 21 Vin. Abr. 274-5 — all to the point that such a verdict will be set aside.